UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERIC WILSON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-3320** |
| **M/V B911, ET AL.** | **SECTION: "S" (3)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that International Construction Equipment, Inc.'s Motion for Partial Summary Judgement against Centaur, LLC for Breach of Contract regarding defense and indemnity (Doc. #33) is **GRANTED**.

**IT IS FURTHER ORDERED** that International Construction Equipment, Inc.'s Motion for Partial Summary Judgement against Centaur, LLC for Breach of Contract regarding insurance coverage (Doc. #34) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion *In Limine* to Exclude Report and Testimony of Plaintiff's Expert Witness David Cole (Doc. #50) is **DENIED**.

## BACKGROUND

Defendant and plaintiff-in-cross-claim, International Construction Equipment, Inc. ("ICE"), filed two motions for summary judgment against co-defendant and defendant-in-cross-claim, Centaur, LLC, arguing that Centaur breached its contractual duty to provide ICE with defense and indemnity and insurance coverage for plaintiff's claims. Also, ICE, Centuar, and co-defendant Associated Terminals, LLC, filed a motion *in limine* seeking to exclude the testimony of plaintiff's expert witness, David E. Cole.

On September 29, 2009, plaintiff, Eric Wilson, was injured while working aboard the M/V B911, a barge owned and operated by his employer, Centaur. Wilson alleges that at the time of the accident, he "was replacing the hydraulic hose on the crane vibrator, when suddenly and without warning, the hydraulic hose blew, throwing [him] to the deck of the barge." At the time of the accident, the M/V B911 was engaged in piling work related to the construction of a flood control gate on navigable waters.

Centaur leased the crane vibrator equipment at issue from ICE on June 16, 2009. The Equipment Rental Agreement, which is the lease contract between ICE and Centaur, includes provisions regarding liability and insurance.

On September 29, 2010, Wilson filed this suit seeking damages for his alleged injuries, in which he named Centaur, ICE, and Associated Terminals as defendants. Thereafter, relying on clauses in the Equipment Rental Agreement, ICE demanded defense and indemnity and production of an insurance policy covering ICE for Wilson's alleged damages from Centaur. Centaur declined to provide ICE with defense and indemnity, and produced an insurance policy that did not name ICE as an additional insured or loss payee. Thus, ICE filed a cross-claim against Centaur for breach of contract.

## ANALYSIS

**A.   ICE's Motions for Partial Summary Judgment (Docs. #33 & 34)**

ICE seeks summary judgment on its claims that Centaur breached its contractual duty under the Equipment Rental Agreement to provide it with defense and indemnity and insurance coverage for Wilson's claims.

### 1.     Legal Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

### 2.     Governing Law

ICE argues that the Equipment Rental Agreement is a maritime contract to which the general maritime law applies.

Whether a contract is a "maritime contract" depends on its nature and character, rather than the place of its execution or performance. Davis & Sons, Inc. v. Gulf Oil Corp., 919 F.2d 313, 316 (5th Cir. 1991) (citing N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 39 S.Ct. 221, 223 (1919); Kossic v. United Fruit Co., 81 S.Ct. 886 (1961)). "A contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime

employment is subject to maritime law." Id. (quoting E. JHIRAD, A. SANN, B. CHASE & M. CHYNSKY, BENEDICT ON ADMIRALTY, § 182 (1988)). In Davis & Sons, Inc., the United States Court of Appeals for the Fifth Circuit explained that the "[d]etermination of the nature of a contract depends in part on historical treatment in the jurisprudence and in part on a fact-specific inquiry." Id. The fact-specific inquiry constitutes an examination of six factors:

> (1) what does the specific work order in effect at the time of the injury provide?
>
> (2) what work did the crew assigned under the work order actually do?
>
> (3) was the crew assigned to work aboard a vessel in navigable waters?;
>
> (4) to what extent did the work being done relate to the mission of that vessel?
>
> (5) what was the principal work of the injured worker?; and,
>
> (6) what work was the injured worker actually doing at the time of the injury?

Id.

Contracts to lease equipment for use on a particular vessel, such as the Equipment Rental Agreement, have been treated in jurisprudence as maritime contracts. See CTI Container Leasing Corp. v. Oceanic Ops. Corp., 682 F.2d 377, 381 (2nd Cir. 1982). Further, at the time of Wilson's injury, ICE's crane vibrator equipment was being used by Centaur aboard a vessel for working on pilings in navigable waters. The mission of the vessel was to work on the pilings to build a flood control gate. Wilson's job aboard the vessel included working with ICE's crane vibrator equipment,

and he was doing that work at the time of the accident. Therefore, the Equipment Rental Agreement was a maritime contract to which general maritime law applies.

### 3. Maritime Contract Interpretation

Generally, courts apply federal common law to resolve maritime disputes. Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 886 (5th Cir. 1991). When interpreting a maritime contract, the general rules of contract construction and interpretation apply. Marine Overseas Services, Inc. v. Crossocean Shipping Co., Inc., 791 F.2d 1227, 1234 (5th Cir. 1986); Ogea v. Loffland Bros. Co., 622 F.2d 186 (5th Cir. 1980). Each provision of a contract must be read in light of others so as to give each the meaning reflected by the contract as a whole. Southwestern Eng'g Co. v. Cajun Elec. Power Co-op., Inc., 915 F.2d 972 (5th Cir. 1990). Further, each provision of a contract must be given a meaning that renders it, along with all other provisions, effective rather than meaningless. See Lewis v. Hamilton, 652 So.2d 1327 (La. 1995). "Interpretation of the terms of a contract is a matter of law." Weathersby v. Conoco Oil Co., 752 F.2d 953, 956 (5th Cir. 1984).

### 4. Defense and Indemnity (Doc. #33)

ICE contends that Centaur breached their contract by failing to provide ICE with defense and indemnity for Wilson's claims.

The interpretation of a contractual indemnity provision in a maritime contract is generally a question of federal maritime law. Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 332 (5th Cir. 1981); Becker v. Tidewater, Inc., 586 F.3d 358, 369 (5th Cir. 2009). "A maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should

be read as a whole and its words given their plain meaning unless the provision is ambiguous." Id. In Corbitt, 654 F.2d at 333, the United States Court of Appeals for the Fifth Circuit stated:

> A contract of indemnity should be construed to cover all losses, damages, or liability which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage.

"The duty to indemnify and hold harmless includes costs and attorney's fees." Lirette v. Popich Bros. Water Transport, Inc., 699 F.2d 725, 728 n. 11 (5th Cir. 1983) (citations omitted).

Indemnification for an indemnitee's own negligence must be "clearly and unequivocally expressed." Seal Offshore, Inc. v. Am. Standard, Inc., 736 F.2d 1078, 1081 (5th Cir. 1984) (citations omitted). An indemnification of "any and all claims" standing alone is not sufficient to indemnify the indemnitee for its own negligence. Id. (citations omitted); East v. Premier, Inc., 98 Fed. Appx. 317, *3 (5th Cir. 2004). However, the indemnity provision need not expressly state whether a party is to be indemnified for its own negligence, because the general maritime law does not have an "express negligence test." East, 98 Fed. Appx. at * 2 (citing Theriot v. Bay Drilling Co., 783 F.2d 527, 540-41 (5th Cir. 1986)). Rather, "[a] duty to indemnify in a given situation will exist if the parties' intention for a particular indemnification can reasonably be inferred from the language of a contract, even in the absence of an express provision." Id. (citing Corbit, 654 F.2d at 333). An indemnity provision can be interpreted to indemnify the indemnitee for its own negligence if it addresses the specific type of cause of action covered and identifies to whom it applies. Id.

Paragraph 8 of the Equipment Rental Agreement states:

> 8. LIABILITY OF LESSEE - ICE shall not be responsible for, and the Lessee shall indemnify ICE against, all loss, damage, expense and penalty arising from any action on account of death or personal injury or damage to property occasioned by the operation, handling or transportation of the Equipment.

This paragraph clearly and unequivocally expresses an intent for Centaur to indemnify ICE for ICE's own negligence for certain types of actions. Paragraph 8 specifies the types of causes of actions for which Centaur agreed to indemnify ICE, personal injury or property damage caused by the operation, handling, or transportation of the equipment. It also identifies to whom that clause applies by stating that ICE is not responsible for such loss, damage, expense, or penalties. See id. Paragraph 8 would have little effect if it did not indemnify ICE for its own negligence regarding personal injury occasioned by the operation, handling, or transportation of the crane vibrator equipment.

Further, paragraph 8 requires Centuar to provide ICE with a defense for personal injury claims that are occasioned by the operation, handling, or transportation of the crane vibrator equipment, because it broadly requires Centaur to indemnify ICE against all expenses arising from such claims. The duty to indemnify includes paying costs and attorneys' fees, and there is no need to use the word "defend." See Lirette, 699 F.2d at 728 n. 11.

Wilson alleges that he sustained personal injuries while operating the crane vibrator equipment. His allegations are covered by the Equipment Rental Agreement's indemnity provision. There are no interpretive issues that render summary judgment inappropriate, as argued by Centaur.

Therefore, Centaur owes ICE defense and indemnity for Wilson's claims, and ICE's motion for partial summary judgment regarding defense and indemnity (Doc. # 33) is GRANTED.

### 5.     Insurance Coverage (Doc. #34)

ICE contends that Centaur breached their contract by failing to provide ICE with insurance coverage for Wilson's claims.

Paragraph 12 of the Equipment Rental Agreement provides:

> 12. INSURANCE - Lessee will provide ICE with evidence in a form satisfactory to ICE of a valid (i) general liability insurance policy and (ii) all-risks, equipment insurance policy covering the Lessee, including the interests of ICE as an additional insured and loss payee, as applicable, and providing at least a ten-day notice of cancellation. Such evidence shall be submitted prior to delivery of the Equipment.

ICE contends that this clause obligates Centaur to provide it with insurance coverage under a general liability insurance policy, which would cover Wilson's alleged injuries. Centaur argues that it is not required to provide such insurance coverage to ICE, but only coverage for equipment. Alternatively, Centaur argues that ICE waived its rights under this clause by failing to require Centaur to provide evidence of insurance coverage prior to the delivery of the equipment on this transaction and on their prior transactions.

Ordinary, under the last antecedent rule of grammar, "a limiting clause or phrase should be read as modifying only the noun or phrase that immediately follows it." Sobranes Recovery Pool I, LLC v. Todd & Hughes Const. Corp., 509 F.3d 216, 223 (5th Cir. 2007). However, "when there is a serial list followed by modifying language that is set off from the last item in the list by a comma, this suggests that the modification applies to the whole list and not only the last item. Id.

Here, the insurance clause in the Equipment Rental Agreement lists two types of insurance, general liability insurance and all-risks, equipment insurance covering Centaur, followed by a comma. The phrase after the comma, "including the interests of ICE as an additional insured and loss payee," modifies both types of insurance. Therefore, Centaur was required to provide general liability insurance which covered ICE's interests as an additional insured or loss payee.

Centaur argues that ICE waived its rights under the insurance clause by not requiring Centaur to produce evidence of such insurance prior to the equipment delivery. Centaur contends that it has rented equipment from ICE many times over several years, and ICE has never required Centaur to produce evidence of insurance. Centaur argues that these repeated actions are evidence of ICE's implied waiver of its rights under the insurance clause. ICE argues that it did not intend to waive its rights under the insurance clause, but rather ICE was satisfied with Centaur's not providing evidence of the insurance policies.

A waiver is a "voluntary or intentional relinquishment of a known right," and "[i]t emphasizes the mental attitude of the actor." Morgan v. Thomas, 448 F.2d 1356, 1365 (5th Cir. 1971). The acts and circumstances surrounding the performance of a contract may imply an alteration, modification, or waiver of contractual provisions. Stauffer Chem. Co. v. W.D Brunson, 380 F.2d 174, 182 (5th Cir. 1967).

ICE's actions do not imply a waiver of its substantive rights under paragrpah 12. ICE's actions waived only the requirement that Centaur provide evidence to ICE of the insurance, not the requirement that Centaur provide the specified insurance coverage. Therefore, Centaur breached the Equipment Rental Agreement by failing to procure a general liability insurance policy including

9

ICE's interests as an additional insured and loss payee, and ICE's motion for summary judgment regarding this issue (Doc. #34) is GRANTED.

**B.     Defendant's Motion *In Limine* to Exclude Cole (Doc. #50)**

Wilson retained David E. Cole, a retired United States Coast Guard Commander, to testify for him as an expert witness. On December 6, 2011, Cole issued a report in which he opined that: (1) the crane vibrator equipment's hose could have been "hung" up because two large hoses pass from the interior of the crane vibrator equipment to the outside through holes that are not gasketed or otherwise fixed in place; (2) oil on the deck could have contributed to Wilson's accident; (3) Wilson was not sufficiently trained; and (4) Wilson's supervisor's failure to consider Wilson's recommendations to cease operating and repair the crane vibrator equipment was a failure to live up to prudent seamanship and marine safety. Cole states that he reviewed Wilson's deposition, the accident alert, the accident report, the construction and maintenance daily log, the subcontractor daily report, the hazard analysis, the barge diagram, and four black and white photocopied of photographs to prepare his report. He also stated that he researched Coast Guard regulations and the history of the barge. Cole declares that his opinions are based on the application of his knowledge and experience to the materials he reviewed.

Defendants seek to exclude Cole's report and testimony. They argue that Cole's opinions are unreliable and unhelpful because he is not an engineer and did not inspect the crane vibrator equipment. They argue that he is not qualified to testify as to what could have caused a mechanical failure in the crane vibrator equipment. Also, they argue that his opinions that oil on the deck could have contributed to the accident and that Wilson was not adequately trained do not comport with the

10

evidence because Wilson testified that oil on the deck did not contribute to the accident and that he was adequately trained.

Wilson argues that Cole is qualified to testify as to marine safety issues. Wilson contends that Cole can testify that maritime workers should not work with malfunctioning equipment. He also argues that Cole should be permitted to testify as to the rules and regulations applicable in the marine environment. Wilson argues that Cole's testimony is necessary to educate the jury on the complexities and nuances of rules and regulations pertaining to working in the marine environment.

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. Gen. Elec. Co. v. Joiner, 118 S.Ct. 512, 515 (1997). Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if 1) the testimony is based upon sufficient facts or data, 2) the testimony is the product of reliable principles and methods, and 3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, 113 S.Ct. 2786, 2795 (1993), the Supreme Court of the United States held that Rule 702 requires the district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." To perform its gatekeeping function, the court must first determine whether the proffered expert testimony is reliable. The party offering the testimony bares the burden of establishing its reliability by a preponderance of the evidence. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir.

1998). The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. See Daubert, 113 S.Ct. at 2796. The goal is to exclude expert testimony that is based merely on subjective belief or unsupported speculation. See id. at 2795. Next, the court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, i.e. whether it is relevant. See id. at 2795-96.

Rule 702 also requires that an expert be properly qualified. Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact. Rushing v. Kansas City S. Ry. Co., 185 F.3d 496 (5th Cir. 1999). A witness qualified as an expert is not strictly confined to his area or practice, but may testify regarding related applications, rather "a lack of specialization does not affect the admissibility of the opinion, but only its weight." Wright v. John Deere Co., 935 F.2d 1090, 1100 (10th Cir. 1991).

Cole's testimony is reliable and relevant. He provides opinions that are based upon his experience and review of evidence. Also, his testimony is relevant because it will assist the jury in understanding issues regarding working in the marine environment. Defendants' concerns regarding Cole's testimony can be addressed by cross-examination, and the motion *in limine* (Doc. #50) is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that International Construction Equipment, Inc.'s Motion for Partial Summary Judgement against Centaur, LLC for Breach of Contract regarding defense and indemnity (Doc. #33) is **GRANTED**.

**IT IS FURTHER ORDERED** that International Construction Equipment, Inc.'s Motion for Partial Summary Judgement against Centaur, LLC for Breach of Contract regarding insurance coverage (Doc. #34) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Motion *In Limine* to Exclude Report and Testimony of Plaintiff's Expert Witness David Cole (Doc. #50) is **DENIED.**

New Orleans, Louisiana, this   16th day of February, 2012.

_____
**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**